IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| KATHY HANSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:15-cv-00880 |
| | ) | Judge Campbell/Knowles |
| METROPOLITAN LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court upon the parties' cross Motions for Judgment on the Administrative Record. Docket Nos. 22, 24, 25. Each of the parties has filed a Response to the other's Motion (Docket Nos. 26, 27), and each of the parties has filed a Reply (Docket Nos. 28, 29).

In this action brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, Plaintiff challenges a decision made by Defendant to deny her $520,000, representing the proceeds of a life insurance policy that insured the Decedent, her son Brad Joseph Hansen. Defendant Metropolitan Life Insurance Company was the Plan administrator of the Plan which covered certain employees at Bridgestone Americas, Inc. Plaintiff was one of those employees.

In denying benefits to Plaintiff, Defendant relied upon the "suicide exclusion provision" of the group life insurance benefit Plan, which essentially provides that benefits are not payable if the Plan participant commits suicide "within 2 years from the date Life Insurance for You takes

effect . . . ." AR 54.[1]

There is no question that Decedent committed suicide on January 31, 2015.[2] Thus, the key question is whether January 31, 2015 is in fact two years, or less, from the date the life insurance for Decedent took effect. In other words, since Decedent committed suicide on January 31, 2015, the effective date of the insurance policy would have to have been before January 31, 2013, in order for the suicide exclusion not to apply.

At some time prior to January 29, 2013, Decedent submitted a "Supplemental Life Insurance Enrollment Form for Bridgestone Americas, Inc. Salary, Non-bargaining Hourly, and Certain Bargaining Teammates." AR 120. In doing so, Decedent applied for life insurance in the amount of five times his basic life insurance, or a total of $520,000 in supplemental benefits.[3] In partially completing the Enrollment Form, Decedent provided basic information, named beneficiaries, and answered several health questions. AR 120-22.

For reasons that are not readily apparent in the record, or elsewhere for that matter,

---

[1] Defendant has filed the Administrative Record (Docket No. 13) and a two-page Supplement to the Administrative Record (Docket No. 19-1). The Administrative Record as filed by Defendant contains pages numbered AR 000001 to AR 000364. The two pages of supplemental documents are labeled AR 00264A and AR 00264B. The Court will use the foregoing numbering system to refer to the Administrative Record, as the parties have done in their briefs. In so doing, the Court will eliminate reference to the preliminary zeros.

[2] At certain points in the briefs, the parties state that Decedent committed suicide on January 29, 2015. *See, e.g.,* Docket No. 27, p. 2. This appears to be a typographical error, however, because the death certificate for Decedent shows his date of death as January 31, 2015. AR 108.

[3] Decedent received, as part of his compensation, "Basic Life Insurance" in the amount of $103,000. He was also permitted to purchase supplemental life insurance of up to five times the amount of his Basic Life Insurance. Because he paid for this extra insurance himself, it is sometimes referred to as supplemental or contributory insurance. Five times $103,000 is actually $515,000. Defendant apparently rounded this amount up to $520,000.

Decedent did not sign the Enrollment Form, nor did he date it, before he initially submitted it to Defendant. After Defendant received the incomplete enrollment form from Decedent, Defendant returned the original enrollment form to him with a letter dated January 29, 2013. The letter states in relevant part as follows:

> RE: Incomplete Enrollment Form
>
> Dear Brad Hansen:
>
> We have received your recent request to change your group term life insurance benefits, but require further information before the form can be processed.
>
> Please complete the highlighted area(s) of the original enrollment form and return it to our office in the enclosed envelope. Retain a copy for your records.

AR 142. There appears to be no argument that the signature and date were the parts of the form that were "incomplete."

Decedent signed the Enrollment Form, and, above a "Date Signed" blank wrote: "2/7/13." AR 122. Decedent sent it back, and Defendant received Decedent's signed and dated Enrollment Form on February 12, 2013.

Defendant determined that Decedent had requested supplemental life insurance on February 7, 2013, the date he wrote on the Enrollment Form. Docket No. 25, p. 7. As will be discussed in greater detail below, because that date was more than 31 days after he became eligible for such insurance (December 1, 2012), under the terms of the Plan, the date on which Mr. Hansen's supplemental life insurance took effect was the date on which Defendant determined he was insurable and on which Defendant so stated in writing. *Id.* at 7-8. Thus, Defendant processed the enrollment and determined that Decedent's supplemental life insurance

3

coverage took effect on March 1, 2013.

After the enrollment date, deductions were made from Mr. Hansen's payroll for the payment of the premiums for the Supplemental Life Insurance. Docket No. 1-1, p. 6; Docket No. 6, p. 4.

After the death of Decedent, Plaintiff submitted a Life Insurance Claim Form to Defendant. AR 106-07; Docket No. 25, p. 8. Defendant paid Plaintiff's claim for Basic Life Insurance benefits in the amount of $103,000. Defendant, however, denied Plaintiff's claim for supplemental life insurance benefits by letter dated March 17, 2015. AR 117-18. Defendant explained that the file reflected that the Enrollment Form completed by Decedent electing such optional coverage had become effective March 1, 2013. Because the death certificate for Decedent stated that he died due to suicide on January 31, 2015, his suicide was within two years from the effective date of coverage, and Plaintiff's claim was denied. Defendant's denial letter also advised Plaintiff of her right to appeal. AR 118.

Plaintiff retained counsel and appealed that decision to Defendant, arguing that in the Enrollment Form, Decedent had requested coverage with an effective date of December 1, 2012, and that the two year suicide exclusion provision did not apply. Docket No. 25, p. 9.

Defendant subsequently denied Plaintiff's appeal, by letter dated June 10, 2015. AR 151-52. That letter stated in relevant part:

> In your appeal, you state that based on the enrollment form, of which a copy was provided to your client, Mr. Hansen requested Optional Life coverage with an effective date of December 1, 2012. You state that since the requested effective date was more than two (2) years prior to his suicide on January 31, 2015, the suicide provision would not apply.

4

> As described above and in the initial denial letter, the effective date of Mr. Hansen's Optional Life was March 1, 2013. The enrollment form Mr. Hansen completed requesting Optional Life coverage to take effect December 1, 2012, was not signed and dated by Mr. Hansen when he originally sent it to the MetLife Recordkeeping office. The enrollment form was then returned to Mr. Hansen on January 29, 2013 with a letter requesting he fully complete the enrollment form with his signature. Then, on February 7, 2013 Mr. Hansen signed the enrollment form and returned it to the MetLife Recordkeeping office.
>
> After receipt of the required signed and dated enrollment form, coverage went into effect on the first of the following month. Therefore, Mr. Hansen's Optional Life coverage initially became effective on March 1, 2013. Based on the suicide provision in the Plan stated above, since Mr. Hansen committed suicide within two (2) years of the effective date of the Optional Life coverage, your client would not be eligible to receive the Optional Life benefits.

AR 152.

Plaintiff filed suit in the Circuit Court for Davidson County, Tennessee. That action was subsequently removed to this Court on the basis of federal question jurisdiction (ERISA), as well as diversity jurisdiction. Docket No. 1.

Plaintiff concedes that the Plan "give [*sic*] the Defendant discretionary authority to determine Supplemental Life Insurance benefits . . . ." Docket No. 22, p. 5. Plaintiff further concedes that the U.S. Supreme Court has established that a denial of benefits "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Docket No. 22, p. 6, *citing Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Thus, where a plan provides the administrator with discretionary authority, the standard of review is "arbitrary and capricious," and the administrator's decision should be upheld "if it is the result of a

5

deliberate, principled reasoning process and if it is supported by substantial evidence." Docket No. 22, p. 6. *Helfman v. GE Group Life Assurance Co.*, 573 F.3d 383, 392 (6th Cir. 2009) (citation omitted). The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. *Byrd v. Prudential Ins. Co. of America*, 758 F. Supp. 2d 492, 509-10 (M.D. Tenn. 2010).

Plaintiff cites *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008) for the proposition that, where an insurance company pays out to beneficiaries from its own assets rather than the assets of a trust, its fiduciary role as an administrator lies in perpetual conflict with its profit-making role as a business. Docket No. 22, p. 6. Plaintiff argues that "this creates a conflict of interest that warrants the application of a 'less deferential standard of review.'" Docket No. 22, p. 6. Plaintiff implies that a "less deferential standard of review," presumably a de novo review, is the appropriate standard. Defendant, however, correctly argues that the existence of a conflict does not alter the standard of review but is merely a factor that should be weighed in determining whether there was an abuse of discretion. Docket No. 27, p. 4, *citing Glenn*, *supra*, 554 U.S. at 115. The *Glenn* Court explained: "[w]e do not believe that *Firestone's* statement implies a change in the standard of review." *Id.*

Defendant argues that Plaintiff cannot point to any evidence to suggest that its determination in 2013 as to the effective date of the supplemental life insurance, or its later determination in 2015 as to the suicide exclusion, was improperly motivated or influenced. Defendant argues that it made the initial determination as to the effective date of Decedent's supplemental life insurance in 2013 after it received his completed Enrollment Form. In 2013, no benefits were payable and no conflict of interest could have existed with respect to that

determination.  After Decedent committed suicide on January 31, 2015, Defendant made a separate determination in 2015 that the suicide exclusion applied under the terms of the Plan.  Defendant made two independent determinations under the terms of the Plan at two different points in time, and these determinations were based on the facts that existed as of each of those times.  Nevertheless, the Court has considered any possible conflict as a factor in the analysis of this case.

After implicitly arguing that a different standard of review should apply, Plaintiff proceeds to analyze the facts of this case under the arbitrary and capricious standard.  Docket No. 22, p. 7.  Plaintiff argues that Defendant's denial of the claim "was based on two (2) false assumptions: (1) that Mr. Hansen did not 'enroll' until February 7, 2013; and (2) the policy did not go into effect until March 1, 2013."  Docket No. 22, p. 11.  Neither of these assumptions, however, is "false."

First, Plaintiff argues that signing and dating the Enrollment Form was a procedural/ministerial function, and that Decedent's "completion" of the Form, without a signature or date, constitutes "substantial compliance" with any requirement that Decedent actually had to complete the Form.  In making these arguments, Plaintiff states that the purpose of the Enrollment Form was for Decedent to provide Defendant "with sufficient information to allow it to make a decision on whether to approve the coverage."  Docket No. 22, p. 11.  This proposition is not cited to any portion of the record, and it appears that this is simply Plaintiff's opinion.  Likewise, Plaintiff argues that, "when there is substantial compliance with the enrollment process, then the performance of the procedural/ministerial function of signing and dating relates back to the date of the original substantial compliance when the substantive

7

information was provided." Docket No. 22, p. 12-13. Plaintiff cites this proposition to *Metropolitan Life Ins. Co. v. Van Meter*, 2010 WL 4237166 (Ky). *Van Meter*, however, addressed the concept of "substantial compliance" in relation to determining life insurance beneficiaries, not to determining eligibility for benefits. Additionally, the Sixth Circuit has not adopted the "substantial compliance" doctrine in ERISA cases. *See Unicare Life & Health Ins. Co. v. Craig*, 157 F. App'x 787, 791 (6th Cir. 2005). Thus, in the Sixth Circuit, a plan participant must complete the steps required by the plan documents. *Craig*, 157 F. App'x at 791.

Plaintiff further argues that Defendant's decision that the Enrollment Form must be signed in order for it to be valid is arbitrary and capricious in that it creates a standard of eligibility that was not contained within the Group Policy or the SPD. As Defendant correctly argues, however, the Plan requires employees who are eligible for insurance to enroll for such insurance by "completing the required form." AR 29 ("If you are eligible for insurance, You may enroll for such insurance by completing the required form."). The "required form" requires the employee's signature and date. AR 122. Just above the signature line on the last page of the enrollment form, the following statement appears:

> Signature(s): The employee must sign in all cases. The person signing below acknowledges that they have read and understand the statements and declarations made in this enrollment form.

AR 122. The "beneficiary designation for employment insurance" states in relevant part, "the Employee signing below names the following person(s) as primary beneficiary(ies) for any MetLife payment upon his or her death." AR 122. Decedent also filled in a box headed "Coverage Effective Date" with the notation "12/01/12." AR 120.

Plaintiff next argues that Defendant's decision that the policy took effect on March 1,

2013, was arbitrary and capricious. The relevant Plan provisions, however, show that Plaintiff's argument is not correct. The Plan provides in relevant part:

> DATE YOUR INSURANCE TAKES EFFECT
>
> Rules for Contributory Insurance
>
> If You request Contributory Insurance before the date You become eligible for such insurance, such insurance will take effect as follows:
>
> - if You are not required to give evidence of Your insurability, such insurance will take effect on the date You become eligible, provided You are Actively at Work on that date.
>
> - if You are required to give evidence of Your insurability and We determine that You are insurable, such insurance will take effect on the date We state in Writing, provided You are Actively at Work on that date.
>
> If you request Contributory Insurance within 31 days of the date You become eligible for such insurance, such insurance will take effect as follows:
>
> - if You are not required to give evidence of Your insurability, such benefit will take effect on the later of:
>
>   - the date You become eligible for such benefit; and
>
>   - the date You enroll provided You are Actively at Work on that date.
>
> - if You are required to give evidence of Your insurability and We determine that You are insurable, such insurance will take effect on the date We state in Writing, provided You are Actively at Work on that date.
>
> If You request Contributory Insurance more than 31 days after the date You become eligible for such insurance, You must give evidence of Your insurability satisfactory to us. You must give such evidence at Your expense. If We determine that You are

> insurable, such insurance will take effect on the date We state in
> Writing, if You are Actively at Work on that date.

AR 30.

The parties agree that Decedent became eligible to enroll for supplemental insurance on December 1, 2012. Docket Nos. 22, p. 2; 25, p. 5-6. He actually applied for the insurance when he submitted his completed Enrollment Form on February 7, 2013. Thus, Decedent requested contributory insurance "more than 31 days after the date" he became eligible for such insurance. Decedent apparently gave evidence of his insurability satisfactory to Defendant, because Defendant determined that he was insurable and actually enrolled him in the supplemental insurance program. Thus, his supplemental insurance took effect on the date stated in writing by Defendant, March 1, 2013.

Plaintiff argues that "Defendant failed to fulfill its fiduciary duties by not notifying [Decedent] in writing of the effective starting date for the policy . . . ." Docket No. 22, p. 17. Plaintiff, however, offers no support for this proposition that can be found in the Plan documents. The term "writing" is defined as "a record which is on or transmitted by paper or electronic media which is acceptable to [MetLife] and consistent with applicable law." AR 28. Defendant placed this effective date in its electronic media. AR 247-50.[4] Moreover, Decedent certainly would have been aware of the effective date because, after that date, the employer would have begun deducting from his wages contributions for supplemental life insurance premiums through payroll deductions.

---

[4]Plaintiff makes an argument that a "snapshot" included in Defendant's brief, which relates to the "writing" requirement "is not included in the administrative record." Docket No. 28, p. 1-2. The "snapshot," however, is merely a photocopy of portions of two pages of the Administrative Record, AR 247 and 249.

The failure to notify Decedent of the effective date did not constitute the breach of any Plan provision.[5] There is nothing in the record to indicate that Defendant attempted to hide its decision from Decedent. Defendant's compliance with the plain language of the Plan cannot constitute the breach of a fiduciary duty.

Furthermore, it was not arbitrary and capricious for Defendant to determine that the coverage would take effect on the first day of the month following the filing of Decedent's completed Enrollment Form on February 7, 2013. An explanatory note in the Administrative Record states in part: "The start of coverage for this customer [presumably Bridgestone] is always the 1st of the following month the form was received or eligibility date, whichever is later." AR 189. As discussed above, Decedent's eligibility date was December 1, 2012. Thus, the "later" date was February 7, 2013, and the coverage took effect on March 1, 2013. It clearly was not arbitrary and capricious for Defendant to interpret the Plan documents in this manner.

Plaintiff further argues that the effective date of the supplemental insurance benefits should be December 1, 2012, because Decedent wrote that date on the first page of his Enrollment Form. Obviously, the date on which Decedent wished the insurance to take effect cannot control over the plain language of the Plan documents.

To the extent that Plaintiff attempts to raise claims under federal common law or a theory of equitable estoppel, such claims are preempted by ERISA. *See* 29 U.S.C. § 1144(a). Plaintiff may not refashion as claims arising under Federal common law, actions and remedies that are already expressly provided for under ERISA. *See Rego v. Westvaco Corp.*, 319 F.3 140, 148 (4th Cir. 2003). ERISA provides Plaintiff with a cause of action and remedy under 29 U.S.C. §

---

[5]Plaintiff did not allege a breach of fiduciary duty in her Complaint. Docket No. 1.

11

1132(a)(1)(B) for Plan benefits, and Plaintiff must proceed under that Section. Additionally, Plaintiff's claim of equitable estoppel fails because Plaintiff does not have a cause of action for such relief when he has availed himself of the remedy under Section 1132(a)(1)(B). *See Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 615 (6th Cir. 1998).

Even if Plaintiff could assert theories of breach of Federal common law or equitable estoppel, there are no grounds for the application of such theories for the reasons discussed above.

For the foregoing reasons, the undersigned concludes that Defendant's decision to deny Plaintiff the $520,000 in proceeds was not arbitrary and capricious. Therefore, Plaintiff's Motion for Judgment on the Administrative Record (Docket No. 22) should be DENIED, and Defendant's Motion for Judgment on the Administrative Record (Docket No. 24) should be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge